<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA R. C.,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 2:25-cv-0539 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Maria R. C.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **VACATED** and the matter is **REMANDED** for further consideration.

## I.    BACKGROUND

### A.    Procedural History

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB, dated November 21, 2024. (ECF No. 1 ¶ 8.) In October 2022, Plaintiff applied for DIB alleging disability beginning on December 22, 2021 (later amended to January 1, 2021), based on the following allegations of impairments: Blurry Vision, Diabetes 2, Heart Attack/Stint, Vertigo,

High Blood Pressure, High Cholesterol, Asthma/Bronchitis, Long Haul COVID Symptoms, and Gastroesophageal Reflux Disease ("GERD"). (Transcript of Proceedings ("Tr.") (ECF No. 4) at 17, 20, 38, 247.)

At Plaintiff's request, Administrative Law Judge ("ALJ") Theresa Merrill held a hearing on January 11, 2024. (*Id.* at 37). In a decision dated February 8, 2024, ALJ Merrill found Plaintiff was not disabled within the meaning of the Act. (*Id.* at 28.) The ALJ's decision became final when the Appeals Council declined review on November 21, 2024. (*Id.* at 1–5.) Having exhausted her administrative remedies, on January 15, 2025, Plaintiff filed her appeal with this Court pursuant to 42 U.S.C. § 405(g), seeking review of ALJ Merrill's decision. (ECF No. 1).

**B.      Administrative History**

ALJ Merrill determined Plaintiff met the Act's insured status requirements through December 31, 2026. (Tr. at 19.) ALJ Merrill employed the five-step process established by the SSA to evaluate whether Plaintiff was eligible for social security and disability benefits. (*Id.* at 19–28.) At the time of ALJ Merrill's decision, Plaintiff was sixty-three years old and had at least a high school education. (*Id.* at 28, 39.)

At step one, ALJ Merrill found Plaintiff had not engaged in substantial gainful activity since January 1, 2021, the alleged onset date. (*Id.* at 19.) While Plaintiff "attempted to work a job as a lunch monitor at the end of 2021," she "had to stop because she experienced frequent dizziness." (*Id.* at 19.) As such, ALJ Merrill found Plaintiff's work as a lunch monitor was an "unsuccessful work attempt." (*Id.*)

At step two, ALJ Merrill found Plaintiff had the following severe medically determinable impairments: chronic ischemic heart disease, asthma, vertiginous syndrome, and peripheral neuropathy. (*Id.* at 20 (citing 20 C.F.R. § 404.1520(c)).) ALJ Merrill determined the following

impairments were non-severe: hyperlipidemia, hypertension, diabetes, sleep apnea, GERD, and vision loss due to cataracts. (*Id.*) ALJ Merrill noted she "considered all of [Plaintiff's] medically determinable impairments . . . when assessing [her] residual functional capacity." (*Id.*)

At step three, ALJ Merrill concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 21.) First, ALJ Merrill determined Plaintiff did not meet the requirements of listing 3.03 (asthma) because "the record does not show any evidence of exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart, with each hospitalization lasting at least 48 hours." (*Id.*) Second, ALJ Merrill concluded Plaintiff did not meet the requirements of listing 4.04 (ischemic heart disease) because there was no evidence any of the following occurred while Plaintiff "was on a regimen of prescribed treatment":

> a sign-or symptom-limited exercise tolerance test demonstrating at least manifestations at a workload equivalent to 5 METs or less; three separate ischemic episodes, each requiring revascularization or not amenable to revascularization within a consecutive 12-month period; or coronary artery disease, demonstrated by angiography or other appropriate medically acceptable imaging.

(*Id.* at 21–22.) Third, ALJ Merrill also concluded Plaintiff did not meet the requirement of listing 11.14 (peripheral neuropathy) because there was (1) no "indication of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," and (2) "no evidence of a marked limitation in physical functioning, and in one of the following: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace or adapting or managing oneself." (*Id.* at 21–22.) Fourth, ALJ Merrill concluded Plaintiff did not meet "any of the listings in Section 2.00" because her vertigo

3

"was treated by medication and physical and vestibular therapy[,] which [Plaintiff] state[d] improve[d] her symptoms." (*Id.* at 22.)

Additionally, before turning to step four,[1] ALJ Merrill "consider[ed] . . . the entire record" and found Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" but with certain "postural and environmental limitations, as well as the limitation of being off task for 5% of the day . . . ."[2] (*Id.* at 22–27.) "In considering [a] claimant's symptoms," ALJs "follow a two-step process . . . ." (*Id.* at 22.) First, ALJ Merrill evaluated "whether there is an underlying medically determinable physical or mental impairment . . . ." (*Id.*) Then, "once an underlying physical or mental impairment[] that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, . . . [ALJ Merrill] . . . evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (*Id.*)

After considering the evidence and conducting the aforementioned two-step process,[3] ALJ Merrill concluded Plaintiff's "statements concerning the intensity, persistence[,] and limiting

---

[1] Earlier in her analysis, ALJ Merrill assessed each of Plaintiff's "non[-]severe" impairments and concluded each did "not significant[ly] limit [Plaintiff's] ability to perform physical or mental work-related activities." (Tr. at 18, 20–21.)

[2] ALJ Merrill noted Plaintiff could "frequently kneel and crouch; occasionally balance, crawl, stoop, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds." (Tr. at 22.) She also noted Plaintiff could "occasionally push and/or pull and operate foot controls using the bilateral lower extremities." (*Id.*) Additionally, she concluded Plaintiff could "frequently handle and finger using the bilateral upper extremities." (*Id.*) However, she also pointed out Plaintiff "must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation." (*Id.*) Moreover, she also explained Plaintiff "must avoid hazards such as unprotected heights and moving mechanical parts." (*Id.*) She also stated Plaintiff "would be off task 5% of the workday due to a need for unscheduled breaks." (*Id.*)

[3] ALJ Merrill concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she had alleged. (Tr. at 23.)

effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 23.) With respect to her asthma, ALJ Merrill highlighted the lack of hospitalizations "due to asthma exacerbations or complications" and that Plaintiff "had been treated conservatively through medications and inhalers . . . ." (*Id.* (citation omitted).) As to Plaintiff's ischemic heart disease, ALJ Merrill acknowledged Plaintiff underwent a "cardiac catheterization procedure and angioplasty" but noted Plaintiff's treatment for that condition was "conservative and consisted of medication . . . ." (*Id.* (citation omitted).) Additionally, as to Plaintiff's vertigo, ALJ Merrill noted that condition had "been treated conservatively through physical therapy, vestibular therapy, and medication which [Plaintiff] reported to be effective." (*Id.* (citations omitted.) ALJ Merrill also explained Plaintiff had not received any treatment for her peripheral neuropathy and her treatment provider was monitoring her symptoms. (*Id.* at 23–24 (citations omitted).) ALJ Merrill also reviewed "the objective evidence," as well as "medical opinion(s) and prior administrative medical finding(s)," and concluded that while some of the opinions and findings were persuasive (or partially persuasive), others were unpersuasive because they lacked support and were inconsistent. (*Id.* at 24–27.)

At step four, ALJ Merrill determined Plaintiff "is capable of performing past relevant work as a residential supervisor" and such "work does not require the performance of work-related activities precluded by" Plaintiff's residual functional capacity. (*Id.* at 27.) ALJ Merrill's step-four analysis included the determination that Plaintiff's work as a residential supervisor at the Young Men's Christian Association (from August 2001 to February 2016) and the Catholic Charities (from March 2009 to March 2021) "was substantial gainful activity,[4] was performed for a

---

[4] With respect to ALJ Merrill's "substantial gainful activity" conclusion, she focused specifically on the period from 2009 to 2020. (Tr. at 27.)

sufficient length of time for an individual to learn and provide average performance[,] and was performed within the relevant period." (*Id.* at 28.) Accordingly, ALJ Merrill did not proceed to the last step of the five-step analysis. (*Id.*)

Based on the aforementioned analysis, ALJ Merrill concluded Plaintiff had "not been under a disability, as defined in the Social Security Act, from January 1, 2021, through the date of" her decision. (*Id.*)

## II.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the

6

evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his

or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2) Capacities for seeing, hearing, and speaking;
    (3) Understanding, carrying out, and remembering simple instructions;
    (4) Use of judgment;
    (5) Responding appropriately to supervision, co-workers and usual work situations; and
    (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520(c) (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

9

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this

10

Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV.    DECISION

Plaintiff appeals the Commissioner's decision and asks the Court to reverse ALJ Merrill's decision and remand the action for further proceedings. (*See generally* ECF No. 10.) However, the Commissioner requests the Court affirm the Commissioner's decision because it claims the ALJ relied on substantial evidence to find Plaintiff not disabled during the relevant period. (*See generally* ECF No. 14.)

### A. The Court Cannot Determine Whether ALJ Merrill's RFC Finding Was Supported by Substantial Evidence Because Her RFC Decision Omits an Analysis of Plaintiff's Non-Severe Impairments.

Plaintiff challenges ALJ Merrill's determination that she possessed the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) but with certain postural and environmental limitations, as well as the limitation of being off task for 5% of the day. (ECF No. 10 at 17–33.) Chief among Plaintiff's arguments is that ALJ Merrill did not sufficiently justify her RFC decision, rendering judicial review of the decision impossible and ripe for vacatur and remand. (*Id.* at 8–17, 23.) Indeed, Plaintiff argues ALJ Merrill erred in her RFC determination because she failed to adequately explain her consideration of Plaintiff's non-severe medically determinable impairments. (*Id.* at 18.) Plaintiff also argues ALJ Merrill ignored "severe" medically determinable impairments and erroneously dismissed "a number of . . . pathologies in [P]laintiff's brain." (*Id.* at 18–19.) In response, the Commissioner contends ALJ Merrill's conclusion was correct and supported by substantial evidence because she "weighed the evidence, including medical opinions, medical evidence, and Plaintiff's allegations" in "assess[ing]" Plaintiff's RFC. (ECF No. 14 at 7–13.)

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence in the record, *id.*, and descriptions and observations of the claimant's limitations from her impairments provided by the claimant and other persons. 20 C.F.R. §§ 404.1545(a)(3), 404.1529. Critically, the ALJ must consider both severe and non-severe impairments when assessing an individual's RFC and the limitations considered as part of it. 20 C.F.R. § 404.1545(a)(2). A claimant's statements about pain or other symptoms, including intensity and persistence, will not alone establish disability; there must be medical signs and laboratory findings which show medical impairment(s) that could reasonably be expected to produce the pain alleged. 20 C.F.R. § 404.1529(a). As the Third Circuit has explained, the ALJ must explain her reasoning such that the RFC determination is amenable to meaningful review. *Burnett v. Comm'r of SSA*, 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," and the ALJ's decision must be "read as a whole" to determine whether he considered the appropriate factors in reaching his conclusion. *Jones*, 364 F.3d at 505.

With respect to Plaintiff's argument that ALJ Merrill failed to explain various components of her RFC decision, the Court agrees in part. (*See* ECF No. 10 at 17–18, 22–23, 30–31.) While the Court disagrees with some of Plaintiff's arguments, ultimately, because the Court cannot "weigh the evidence or substitute its conclusions for those of the ALJ," *Fitzpatrick v. Comm'r of Soc. Sec.*, Civ. A. No. 19-7608, 2020 WL 1872978, at *4–6 (D.N.J. Apr. 15, 2020), or determine for itself whether Plaintiff's non-severe impairments would change the RFC calculation, the matter must be reversed and remanded for further proceedings "so that the ALJ may properly consider how Plaintiff's [hyperlipidemia, hypertension, vision issues, diabetes, sleep apnea, and GERD] affect her RFC and her capability to perform . . . other work that exists in the national economy."

12

*Id.*

First, Plaintiff contends ALJ Merrill failed to include a "statement or finding in the decision that reveals how long/much [P]laintiff can stand, walk, sit, lift[,] or carry[,] . . . render[ing] the exertional light work RFC as . . . a conclusory statement rather than a factual finding." (ECF No. 10 at 23.) Further, Plaintiff suggests the decision is devoid of even "a statement of the plaintiff's work related abilities, much less a function by function analysis." (*Id.*) In response, the Commissioner points out ALJ Merrill's RFC decision referenced "light work as defined in 20 C.F.R. 404.1567(b)." (ECF No. 14 at 11 (quoting Tr. at 22).) This reference, according to the Commissioner, encompasses ALJ Merrill's determination that Plaintiff could "stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday." (*Id.* (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1. 1983)).) The Court agrees.

Although an ALJ is required to "consider all evidence before him" and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence" *Burnett*, 220 F.3d at 121, the indication of the ALJ's reasoning may be "implicit" in the decision. *Deranie A. v. Comm'r of Soc. Sec.*, Civ. A. No. 23-03157, 2024 WL 3665811, at *7 (D.N.J. Aug. 5, 2024). Here, a review of ALJ Merrill's decision makes clear that she justified her conclusion that Plaintiff could perform a range of light work. For instance, in concluding Plaintiff could perform a range of light work, ALJ Merrill considered Plaintiff's own statements about symptoms related to her vertigo, including her ability to walk and sit. (Tr. at 22–23.) ALJ Merrill considered Plaintiff's testimony that "when she stands up, everything begins to spin, and she loses balance" and "that she could stand for approximately two minutes before needing to sit down[,] walk for less than half a block before needing to stop[,] and she could sit for approximately two hours." (Tr. at 23.) However, ALJ Merrill concluded these statements were "not entirely consistent with the

13

medical evidence and other evidence in the record for the reasons explained in th[e] decision." (*Id.*) ALJ Merrill pointed out Plaintiff's "vertigo ha[d] been treated conservatively through physical therapy, vestibular therapy, and medication which [Plaintiff] reported to be effective." (*Id.* (citing Tr. at 710, 731 758, 760).)

Plaintiff is correct that ALJ Merrill did not include an express statement enumerating the degree to which Plaintiff could walk or sit. (*See* ECF No. 10 at 23.) But ALJ Merrill's analysis, showing what she did and did not credit, combined with her conclusion that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b) is enough. *Deranie A.*, 2024 WL 3665811, at *7 ("[I]t is sufficient for the RFC determination to be supported by 'substantial evidence' in the entire record, and it is unnecessary for the ALJ to engage in an explicit 'function-by-function' analysis where the reasoning for the decision is implicit in the record." (quoting *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019)).)

Second, Plaintiff takes issue with ALJ Merrill's apparent failure to explain her limitation for 5% off-task time. (ECF No. 10 at 31 ("[T]he decision should explain how the 5% RFC finding makes evidentiary sense.").) The Commissioner points out in response ALJ Merrill "specifically noted that the off-task limitation was intended to account for Plaintiff's 'need for frequent breaks' due to side-effects of Plaintiff's medication, which caused her to use the bathroom frequently." (ECF No. 14 at 11 (quoting Tr. at 26.).) Indeed, ALJ Merrill's decision reads, in part, as follows:

> Given [Plaintiff's] allegations of numbness and tingling in her bilateral hands and feet, as some of her medication which cause her to frequently use the bathroom, the undersigned has assessed that the claimant would be off task 5% of the day due to the need for frequent breaks and is limited to frequently performing handling, fingering, and feeling with the bilateral upper extremities, and

14

> occasionally pushing and/or pulling and operating foot controls with the bilateral upper extremity.

(Tr. at 26.) This—as best the Court can tell—is an explanation, undermining Plaintiff's assertion that ALJ Merrill did not explain the limitation for 5% off-task time. (*But see* ECF No. 10 at 31.)

Third, Plaintiff contends ALJ Merrill erred by failing to consider various "non[-]severe" impairments, namely, hypertension, vision issues, diabetes, and sleep apnea, as part of the RFC assessment.[5] (ECF No. 10 at 17.) The Commissioner points out, in response, that ALJ Merrill's decision "considered all of the [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] [RFC]." (ECF No. 14 at 12 (citing Tr. at 21).) Here, Plaintiff is correct.

The Court's review of ALJ Merrill's RFC analysis does not end simply because of the ALJ's say-so. Even reading ALJ Merrill's decision "as a whole," *Jones*, 364 F.3d at 505, it is evident ALJ Merrill failed to consider Plaintiff's non-severe impairments in her RFC decision. (Tr. at 22–27.) Although ALJ Merrill provided a comprehensive assessment of why Plaintiff's hyperlipidemia, hypertension, diabetes, sleep apnea, GERD, and vision loss are "non[-]severe

---

[5] Plaintiff also contends ALJ Merrill erred in not finding these impairments to be severe. (ECF No. 10 at 17.)  Because ALJ Merrill's analysis of the case ventured beyond step two, any alleged error regarding severity or non-severity is harmless error. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) ("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). Accordingly, the Court "need not assess whether the ALJ's step two determination was actually erroneous." *Williams v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 12-5637, 2013 WL 4500335, at *18 n.7 (D.N.J. Aug. 21, 2013). Similarly, even assuming Plaintiff's argument that ALJ Merrill erroneously "dismiss[ed] . . . a number of objectively proven pathologies in plaintiff's brain" is correct, this supposed error is likewise harmless because ALJ Merrill proceeded beyond step two. (ECF No. 10 at 19; ECF No. 15 at 1–2); *see also Auriemma v. Colvin*, Civ. A. No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) ("So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless."). Therefore, the Court need not decide whether this dismissal was actually erroneous. *Williams*, 2013 WL 4500335, at *18 n.7.

impairments" (Tr. at 20–21), she failed to assess how these non-severe impairments affected Plaintiff's RFC (*id.* at 22–27). Perhaps ALJ Merrill failed to do so because she had essentially concluded "at step two that those symptoms [related to Plaintiff's non-severe impairments] had abated." *McClease v. Comm'r of Soc. Sec.*, Civ. A. No. 08-1673, 2009 WL 3497775, at *11 (E.D. Pa. Oct. 28, 2009). But "an ALJ may not rely on a finding of non-severity as a substitute for an RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016).

ALJ Merrill did reference several of Plaintiff's statements regarding her high blood pressure, diabetes, and vision issues when recounting her hearing testimony (*id.* at 23.), but she did not include a meaningful explanation of whether, if at all, all of Plaintiff's non-severe impairments had an impact on Plaintiff's RFC (*id.* at 22–27). Put differently, it appears ALJ Merrill's RFC decision focused almost solely on Plaintiff's asthma, ischemic heart disease, vertigo, and peripheral neuropathy, *i.e.*, her severe impairments. (*Id.*) In so doing, ALJ Merrill strayed from the requirements of 20 C.F.R. § 404.1545(a)(2). *Das v. Comm'r Soc. Sec.*, No. 22-3229, 2023 WL 6157395, at *4 (3d Cir. Sept. 21, 2023) ("The ALJ must consider both severe and non-severe impairments when assessing an individual's RFC and the limitations considered as part of it." (citing 20 C.F.R. § 404.1545(a)(2)).) As such, ALJ Merril's RFC decision is insufficient, making vacatur and remand necessary.

## V.    CONCLUSION

For the reasons set forth above, the Commissioner's decision is **VACATED**, and the matter is **REMANDED** for further consideration consistent with this Opinion. On remand, the ALJ is **ORDERED** to consider Plaintiff's non-severe impairments in assessing the RFC.[6]

Date: February 27th, 2026                              /s/ Brian R. Martinotti
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**

---

[6] In light of the Court's conclusion and the possible change in the RFC decision, the Court need not address Plaintiff's remaining argument. (*See* ECF No. 10 at 33–39 (arguing ALJ Merrill's step-four analysis is (1) violative of both the Commissioner's policy at the time of the decision and his new policy, and (2) not based on substantial evidence)); *see also Carratura v. Saul*, Civ. A. No. 20-05483, 2021 WL 4077565, at *7 n.4 (D.N.J. Sept. 8, 2021) ("Upon remand, however, this issue may be moot should the ALJ amend [her RFC decision]. As such, the Court need not consider this argument at this time.").